JOURNAL ENTRY AND OPINION
{¶ 1} Defendant-appellant Khalif Willis appeals from his conviction after a jury *Page 2 
found him guilty of theft.
 {¶ 2} Willis presents a single assignment of error in which he argues his conviction is unsupported by the weight of the evidence. Since the record belies his argument, however, his conviction is affirmed.
 {¶ 3} In July, 2003, the Value City department store located in Euclid, Ohio hired Willis as an employee. He worked in two departments, including receiving, for approximately nine months, until he switched to the shoe department in August 2005. There, his basic duties included customer service and stocking the displays and the shelves.
 {¶ 4} At the end of his shift, Willis was expected to remove trash, including empty delivery boxes, from the department. Trash went to the stockroom in the "receiving area," where the compactor was located. The stockroom contained many additional empty boxes that awaited the compacting process. This was also the location of the store's unloading dock; a large overhead door led to the outside of the building.
 {¶ 5} At approximately 6:20 p.m. on September 15, 2005, Willis' actions attracted the attention of Victoria Drummond, one of the store's loss prevention officers, as she monitored the store's surveillance cameras. She noticed Willis moving a platform dolly with several boxes loaded on it; he pushed it from his area through the store to the door that led into the stockroom. The timing of his trip *Page 3 
seemed unusual because several hours of his shift remained. Drummond recorded her observations with the video cameras she used.
 {¶ 6} As Drummond watched, she saw Willis enter the stockroom and remove three boxes from the platform. He moved toward the trash compactor with them, but dropped one from the bottom of the stack on his way. The dropped box was a black shoe box with an "Adidas" label. It fell to the floor in the aisle that led to the "processing" area, where boxes were opened and their contents removed, which lacked any video cameras. Willis then placed the other boxes into the trash compactor.
 {¶ 7} Before he left the stockroom, he went into the processing area, making a kicking motion with his legs as he proceeded, as if pushing the box he previously dropped. After a short time, he reentered the stockroom, moved the platform dolly through the door to the main floor area of the store, and returned to his department.
 {¶ 8} Drummond continued her surveillance of his activities. Near 7:00 p.m., she noticed another employee, Kevin Hendricks, in the shoe department. Hendricks selected a pair of athletic shoes from a display shelf and placed them onto a store counter. He then approached Willis to engage him in a short conversation.
 {¶ 9} Hendricks worked as a receiver. Since his duties were to unload and unwrap merchandise upon its delivery to the store, he had legitimate access to the unloading dock, the stockroom, and the processing area. Drummond decided to *Page 4 
divide her attention to try to watch both young men.
 {¶ 10} Hendricks began to shop. He moved through several sections of the store, carefully choosing items such as infant's clothing and menswear. Drummond saw him as he eventually took the items into the stockroom and proceeded into the processing area. When Hendricks returned to the stockroom to make a cellular telephone call, he no longer held any merchandise.
 {¶ 11} Drummond subsequently returned her attention to Willis in the shoe department. She watched as he removed a box from the shelf, opened it, and tried on the pair of shoes it contained. Willis then replaced the shoes and carried that box, along with another, toward the stockroom.
 {¶ 12} When Drummond switched cameras, Willis worked alone inside the stockroom for the second time that evening. He moved what appeared to be a tall cardboard shipping carton overfilled with heavy trash, dragging it past the compactor and into the processing area. After a few minutes, he reappeared in the stockroom with the tall carton. Now its total contents appeared less, but, by that time, on top lay a black shoe box labeled "Adidas." Willis at that time emptied all of the carton's contents into the compactor before leaving the stockroom.
 {¶ 13} By this time, Drummond decided to telephone her supervisor, Sean Derenzo. Upon her description of her observations, Derenzo reported to the store. He waited outside the delivery door with a "walkie-talkie" to maintain contact with *Page 5 
Drummond.
 {¶ 14} At approximately 7:45 p.m., Drummond saw Hendricks unlock the delivery dock door and open it. He then pulled a large and apparently heavy box from the processing area to the door and placed it outside on the dock. According to Derenzo, trash "never" went "outside the building," so there was no reason for Hendricks' action. Hendricks subsequently went into the processing room again and returned with a second box that contained shoes.
 {¶ 15} Derenzo and Drummond confronted Hendricks and summoned the police. Both Hendricks and Willis were arrested for theft. Hendricks eventually admitted he and Willis planned to take the boxes of merchandise and to place all of the items into Willis' car at the end of the workday. An inventory of the items in the boxes indicated the value of the merchandise exceeded $1500.00.
 {¶ 16} Willis and Hendricks were indicted together on one count of theft in an amount between $500.00 and $5000.00. Willis received a separate jury trial, at which the state presented as its witnesses Derenzo, Drummond and Hendricks.
 {¶ 17} Willis presented the testimony of his supervisor, who had been on vacation at the time of the incident; the supervisor indicated Willis was a good employee. Willis also testified in his own behalf.
 {¶ 18} Willis testified that the conversation with Hendricks only involved covering for him while he went on break. Willis additionally explained that he went *Page 6 
from the stockroom into the processing area only to listen to the radio and to answer a telephone. However, he did not recall kicking his right leg as he walked, and had no explanation for why he moved the entire tall cardboard carton into the processing area only to answer the telephone.
 {¶ 19} The jury ultimately found Willis guilty of the charge. After obtaining a presentence report, the trial court sentenced Willis to a two-year term of conditional community control.
 {¶ 20} Willis presents the following single assignment of error.
 {¶ 21} "Appellant's conviction was against the manifest weight of the evidence."
 {¶ 22} Willis argues that since the videotape demonstrates he had no contact with any of the "stolen" items, his conviction is improper. He asserts that since the record reflects both that none of the shoes found in the boxes matched the size of the shoes he wore at trial, and further, that only Hendricks pushed the boxes out of the building, the jury incorrectly assessed the evidence.
 {¶ 23} In reviewing the weight of the evidence, this court examines the entire record to determine whether in resolving conflicts in the evidence, the jury clearly lost its way, creating a manifest miscarriage of justice that requires reversal of the conviction. State v.Thompkins, 78 Ohio St.3d 380, 386, 1997-Ohio-52. This court remains mindful that the weight of the evidence and the credibility of the witnesses *Page 7 
are matters primarily for the trier of fact to consider. State v.DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus.
 {¶ 24} Willis was charged in this case with violating R.C. 2913.02, which forbids a person "with purpose to deprive the owner of property, [from] knowingly obtaining] or exert[ing] control over * * * the property * * * [w]ithout * * * consent * * *." Willis worked at the store long enough to be aware of the surveillance cameras. He also had experience with procedures in the receiving area, i.e., the stock and processing rooms and the unloading dock. The jury watched a videotape that showed Willis taking actions, however, that seemed inconsistent with his then-current job duties.
 {¶ 25} The videotape shows Willis exerting control over some of the store's merchandise; first, he dropped a shoe box before consigning other boxes to the trash compactor, then turned and seemed to be kicking it into a room that lacked any cameras. Shortly after he and Hendricks conversed briefly in the shoe department, and after Hendricks took his shopping items into the receiving area, Willis tried on a pair of shoes. Within a few minutes, Willis returned to the stockroom, pushing a tall shipping carton around, and then removing it from camera sight into the processing area. When he returned to view, the box did not look so filled as it had previously.
 {¶ 26} Hendricks explained that he and Willis planned to take some merchandise that night. At the end of the night, he was to transfer the items they both had collected onto the loading dock. *Page 8 
 {¶ 27} The jury had the opportunity to assess the testimony of Hendricks, Drummond and Derenzo in light of the videotape. Hendricks' testimony, moreover, found corroboration even in some of the minor matters Drummond and Derenzo mentioned. Willis, on the other hand, seemed nervous on the stand, and provided explanations for his behavior that seemed unbelievable. The jury certainly could determine he lacked credibility.
 {¶ 28} The jury's verdict that Willis was guilty of theft, therefore, finds support in the weight of the evidence. Middleburg Heights v.Feltes, Cuyahoga App. No. 81776, 2003-Ohio-3248; New Boston v.Arthur, Scioto App. No. 01CA2818, 2002-Ohio-3764.
 {¶ 29} Accordingly, his assignment of error is overruled.
Affirmed.
It is ordered that appellee recover from appellant costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. *Page 9 
 FRANK D. CELEBREZZE, JR., A.J. and MARY EILEEN KILBANE, J. CONCUR *Page 1